IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NADASIA CAMPBELL, )<br>)<br>Plaintiff, )<br>) No. 2:25-cv-03100-DCN<br>vs. )<br>) **ORDER**<br>NAVY FEDERAL CREDIT UNION, )<br>NIKKI BATSON, and BRANDEN )<br>GOODWIN, )<br>)<br>Defendants. )<br>_____ ) | |

The following matter is before the court on plaintiff Nadasia Campbell's ("Campbell") motion to remand, ECF No. 4, and defendants Navy Federal Credit Union ("NFCU"), Nikki Batson ("Batson"), and Branden Goodwin's ("Goodwin") (collectively, "defendants") motion to dismiss, ECF No. 7. For the reasons set forth below, the court grants Campbell's motion to remand and finds as moot defendants' motion to dismiss.

**I. BACKGROUND**

**A. Factual History**

Campbell alleges that she was wrongfully terminated by NFCU and that she was defamed by defendants. ECF No. 1-3, New Compl.[1] ¶¶ 7, 28. Beginning in December

---

[1] The parties use the designation "Original Complaint" to refer to Campbell's complaint against Navy Federal Investment Services, LLC; Navy Federal Financial Group, LLC; and Navy Federal Title Services, LLC, d/b/a Navy Federal Credit Union. See ECF No. 1-2. Likewise, the parties use the designation "New Complaint" to refer to Campbell's complaint in this action against NFCU, Batson, and Goodwin. See ECF No. 1-3. In accordance with the parties' briefing and for purposes of clarity, the court's analysis utilizes the parties' complaint designations throughout this order.

1

2022, Campbell was employed by NFCU as a member services representative at the West Ashley branch in Charleston, South Carolina. Id. ¶¶ 8. Batson was the West Ashley branch manager and one of Campbell's supervisors. Id. ¶ 15. Goodwin was the West Ashley assistant branch manager and Campbell's direct supervisor. Id. ¶ 14. In July 2024, Campbell informed defendants of her intention to enlist in the United States Navy. Id. ¶ 16. Campbell alleges that, in the following months, defendants fabricated disciplinary "write ups" against her, disciplined her under false accusations of violating workplace policies, and made defamatory statements about her to NFCU employees at other branch locations. Id. ¶¶ 17–23. Campbell was ultimately terminated on December 3, 2024. Id. ¶ 34.

### B. Procedural History

Campbell filed the Original Complaint against defendants Navy Federal Investment Services, LLC, Navy Federal Financial Group, LLC, and Navy Federal Title Services, LLC, d/b/a Navy Federal Credit Union (collectively, the "Original Defendants") on February 21, 2025, asserting a single cause of action for wrongful termination. ECF No. 1-1, Original Compl., Campbell v. Navy Fed. Inv. Serv., No. 2025-CP-1000-983 (Charleston Cnty. Ct. C.P. Feb. 21, 2025). She mistakenly named the Original Defendants in the Original Complaint, and NFCU informed Campbell of her mistake. ECF No. 9 at 5. On April 14, 2025, Campbell voluntarily dismissed the lawsuit against the Original Defendants. ECF No. 4-1 at 2.

Rather than amending the Original Complaint, and prior to voluntarily dismissing it, Campbell filed the New Complaint in the Charleston County Court of Common Pleas on April 9, 2025. ECF No. 1-3, New Compl.; Campbell v. Navy Fed. Credit Union, No.

2025-CP-100-1963 (Charleston Cnty. Ct. C.P. Apr. 9, 2025).  She asserts two causes of action: (1) wrongful termination in violation of public policy against NFCU, and (2) defamation against all defendants.  New Compl. ¶¶ 31–59.

On April 11, 2025, defendants removed the case subject to the New Complaint to this court.  ECF No. 1.  On April 16, 2025, Campbell filed her motion to remand.  ECF No. 4.  On May 7, 2025, defendants responded in opposition.  ECF No. 9.  Campbell replied on May 14, 2025.  ECF No. 11.  Also before the court is defendants' motion to dismiss, filed on May 2, 2025.  ECF No. 7.  On May 26, 2025, Campbell responded in opposition.  ECF No. 14.  On June 9, 2025, defendants replied.  ECF No. 18.  The court held a hearing on the motion to remand on July 24, 2025.  ECF No. 20.  As such, the motions are fully briefed and ripe for the court's review.

## II.  STANDARD

Federal courts are courts of constitutionally limited jurisdiction.  Original jurisdiction exists where a claim arises from federal law, 28 U.S.C. § 1331, or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizens of different states, 28 U.S.C. § 1332.

Generally, any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where such action is pending.  28 U.S.C. § 1441(a).  "The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper," Nordan v. Blackwater Sec. Consulting, LLC (In re Blackwater Sec. Consulting, LLC), 460 F.3d 576, 583 (4th Cir. 2006), and doubts regarding the propriety of removal are to be resolved in favor of

retained state court jurisdiction, Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993). Because removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

### III.  DISCUSSION

Both Campbell's motion to remand and defendants' motion to dismiss are essentially based on the same issue: whether Campbell can maintain a defamation cause of action against Goodwin and Batson, the non-diverse defendants. See ECF Nos. 4; 7. "When the court has been presented with both a motion to remand and [a] motion to dismiss, the court will first look to the motion to remand, as the court will only consider the motion to dismiss, if it first determines that it has subject matter jurisdiction over the action." Dupree v. Fay Servicing, LLC, 392 F. Supp. 3d 639, 642 (E.D. Va. 2019); accord Burrell v. Bayer Corp., 918 F.3d 372, 379 (4th Cir. 2019). As such, the court first addresses Campbell's motion to remand. ECF No. 4.

**A. Diversity Jurisdiction**

All parties agree that Campbell, Batson, and Goodwin are citizens of South Carolina. See New Compl. ¶¶ 1–4; ECF No. 9 at 4. However, defendants argue that the court should disregard the citizenship of the parties and retain jurisdiction over the case pursuant to the fraudulent joinder doctrine because Batson and Goodwin are "sham defendants" in regard to Campbell's defamation claim. ECF No. 9 at 2–4.

In response, Campbell argues that the court must remand this matter to state court for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). ECF No. 4 at 1. Specifically, she asserts that the court lacks diversity jurisdiction because the parties are

4

not completely diverse: Campbell, Batson, and Goodwin are citizens of South Carolina. Id. at 2.

In her motion to remand, Campbell asserts that Batson and Goodwin are not "sham" or "fraudulently joined" defendants, and, in fact, are not "joined" to any action. ECF No. 4-1 at 5. First, she argues that Batson, Goodwin, and NFCU are all defendants named for the first time in this suit. Id. She further argues that defendants cannot establish the non-diverse defendants were fraudulently "joined," and have not, and cannot, put forth any evidence that they were. Id. She maintains that under South Carolina law, she has a claim against defendants, including Batson and Goodwin, for defamation. Id. at 6. Campbell argues that defendants cannot identify any violation of state or federal statute, nor any violation of the State or Federal Rules of Civil Procedure which would prevent remand. ECF No. 11 at 3.

In response, defendants argue that the case should not be remanded. ECF No. 9 at 1. They argue that Campbell fraudulently joined Batson and Goodwin to avoid diversity jurisdiction and does not have a valid claim for defamation against them. Id. Defendants posit that "procedurally, if [Campbell] wanted to add a claim for defamation against in-state defendants Batson and Goodwin, the proper procedure would have been for [her] to seek leave of court to file an amended complaint." Id. at 4. However, they offer no procedural rule or legal authority to support their position. Id. They do cite to West v. Family Dollar Stores of South Carolina, LLC, 2024 WL 495661, at *2 (D.S.C. Feb. 8, 2024) (when amendment of a complaint will destroy diversity, leave of court is required even if the existing defendants have not yet filed responsive pleadings).

5

The court finds it was proper, if not inventive, for Campbell to withdraw and refile her complaint, as a plaintiff is "the master of her complaint," and defendants have provided no rule for her actions being procedurally incorrect. See Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996). Although defendants cite to West, in that case the defendant amended his complaint, whereas here Campbell has not amended her complaint, but has filed an entirely new suit against entirely new defendants, albeit with similar allegations. Aside from pointing to West, defendants have not cited to any specific rule or case law that states Campbell must amend her complaint, instead of withdrawing and refiling a new one, when none of the defendants are the same. Thus, there is clearly not diversity between the parties. However, the court will continue to analyze the defendants' fraudulent joinder argument.

### B.  Fraudulent Joinder

The fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). To demonstrate fraudulent joinder, the removing party has the burden of proving "either: [1] [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [2] [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Id. at 464 (alterations in original) (quoting Marshall, 6 F.3d at 232). When deciding a fraudulent joinder issue, the court's function is simply "to steer litigation to the proper forum with a minimum of preliminary fuss." Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999). The "best way to

advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper." Id. at 425. "[T]here need be only a slight possibility of a right to relief" against the in-state forum defendant in order to defeat removal under 28 U.S.C. § 1441(b)(2). Id. "Once the court identifies [a] glimmer of hope for the plaintiff's right to relief against the in-state forum defendant, the jurisdictional inquiry ends." Id.

In this case, defendants base their fraudulent joinder argument on the assertion that there is no possibility Campbell could recover against them. ECF No. 9 at 4. The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff "cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Hartley, 187 F.3d at 422, 425. The court must remand if there is a "possibility of recovery." Id. at 425. As such, the central issue for this court to decide the fraudulent joinder question is whether there is any "possibility" that Campbell could establish her defamation cause of action against defendants. See id. To determine whether Campbell can establish a claim and recover, this court will first look to what she must prove.

Under South Carolina law, to establish a claim of defamation, a plaintiff must show: (1) a false and defamatory statement was made; (2) the unprivileged publication [of the statement] was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Erickson v. Jones St. Publishers, LLC, 629 S.E.2d 653, 664 (S.C. 2006). Here, defendants argue that Campbell cannot satisfy the first and second elements, and thus her defamation claim should be dismissed. ECF No. 9 at 6. As such, the court reviews these two elements in more detail below.

The first element of defamation is a false and defamatory statement. <u>Erickson</u>, 629 S.E.2d at 664. A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with him. <u>Holtzscheiter v. Thomson Newspapers, Inc.</u>, 332 S.C. 502, 520, 506 S.E.2d 497, 513 (1998). To prevail in a defamation action, the plaintiff must establish that "the defendant's statement referred to some ascertainable person and that the plaintiff was the person to whom the statement referred." <u>Burns v. Gardner</u>, 493 S.E.2d 356, 359 (S.C. Ct. App. 1997).

The defamatory statements at issue include:

- Defendants began a campaign of making false and defamatory statements about Plaintiff to other NFCU employees outside of the branch where Plaintiff worked. Such false statements included telling the other NFCU employees that she was a bad employee, irresponsible, and could not get to work on time. New Compl. ¶ 20.

- Defendants, NFCU, Batson, and Goodwin, in their individual capacities and as agents of [NFCU], made false and defamatory statements to third parties, including, but not limited to, members of the public and other NFCU employees about Plaintiff. <u>Id.</u> ¶ 55.

- Defendants, NFCU, Batson, and Goodwin, in their individual capacities and as agents of NFCU, made false and malicious statements and insinuations about Plaintiff that claimed Plaintiff was unfit in her business or profession. <u>Id.</u> ¶ 56.

- Defendants, NFCU, Batson, and Goodwin, in their individual capacities and as agents of NFCU, made false and malicious statements and insinuations about Plaintiff that falsely claimed Plaintiff was a bad employee, irresponsible, and could not get to work on time. <u>Id.</u> ¶ 57.

As to the first element, Campbell argues that the New Complaint states a viable claim for defamation against Batson and Goodwin. ECF No. 11 at 5. She alleges defendants defamed her by taking actions that insinuated that she was unfit for her profession in finance and banking. ECF No. 11 at 5; New Compl. ¶ 20. She contends

8

that, as a result, she was denied a transfer to a different branch because of defendants' false statements and insinuations. New Compl. ¶ 30.

Defendants do not concede that they made any defamatory statements, but they argue the alleged statements cannot be defamatory because a plaintiff cannot maintain a defamation action premised on a true statement. ECF No. 9 at 7; citing to Blanton v. City of Charleston, 2014 WL 4809838, at *4 (D.S.C. Sept. 26, 2014). They argue that the statements Campbell points to – that she was a bad employee and could not get to work on time – are statements regarding the reason she was terminated. ECF No. 9 at 7. They point to Campbell's complaint which states that the reason for her termination was related to her attendance, and that she had received previous disciplinary write-ups regarding that same issue. Id.; see New Compl. ¶¶ 18–19, 28.

To determine if Campbell can succeed on her defamation claim, the court looks to the sufficiency of her defamation allegations. See Alford v. Wang, Inc., 11 F. Supp. 3d 584, 587–88, 597 (D.S.C. 2014) (eschewing requirement that the plaintiff allege the names of the listeners and allowing a defamation claim to proceed where the plaintiff specifically alleged that the defendant "told other employees that she had been demoted because she was stealing from the store and because she was a racist") and Johnson v. Duke Energy, 2014 WL 2434630, at *2 (D.S.C. May 29, 2014) (where the plaintiff alleged that the defamatory statements were made "to a discrete group of individuals" within a two month period). The key question is whether a plaintiff has alleged enough context and specificity "to put the [other party] on notice as to which statements it was to defend[ ] against." Ortiz v. Jackson, 2023 WL 5208007, at *3–4 (D.S.C. Aug. 14, 2023) (quoting Davis v. Penn Fin., LLC, 2021 WL 3088059, at *3 (D.S.C. July 22, 2021)).

9

Here, the claim provides enough context for defendants to know what specific statements she alleges have been made, as it includes context such as "telling the other NFCU employees that she was a bad employee, irresponsible, and could not get to work on time." New Compl. ¶ 20. The court finds the complaint provides at least a "glimmer of hope" that defendants made a defamatory statement. See Hartley, 187 F.3d at 425. The statements made were of the sort to harm Campbell's business reputation, evidenced by her being unable to obtain a job at another location. New Compl. ¶ 30, see Murray v. Holnam, Inc., 542 S.E.2d 743, 745 (S.C. Ct. App. 2001) ("A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.").

There is, of course, a factual dispute over whether the statements were true. Resolving this fact discrepancy in Campbell's favor, as the court is required to do on a motion to remand, the court finds there is a "mere possibility" that the alleged defamatory statements that Campbell was a bad employee, irresponsible, and could not get to work on time were not true. See Hartley, 187 F.3d at 425. The court points to statements in the complaint such as, "[d]efendants issued [Campbell] a disciplinary "write up" for her attendance, even though [she] followed [their] policies regarding using annual and personal leave" and "Campbell's supervisors falsely accused [her] of being [] late by 'two minutes' even when [she] arrived from her scheduled break on time." New Compl. ¶¶ 18–19. As such, the court finds there is at least a mere possibility she can establish the first element of her defamation claim.

The second element of defamation is an unprivileged publication to a third party. See Erickson, 629 S.E.2d at 664. The publication of defamatory matter is its

communication, intentionally or by a negligent act, to a third party—someone other than the person defamed. Holtzscheiter, 506 S.E.2d at 507. Additionally, a statement is conditionally privileged if the following elements are met: "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." Manley v. Manley, 353 S.E.2d 312, 315 (S.C. Ct. App. 1987).

Here, Campbell argues that the defamatory statements were published because defendants spread false and defamatory statements about her to third parties outside of her branch who had no interest in the communication. ECF No. 11 at 5; New Compl. ¶ 22. Moreover, she argues these statements lowered her standing in the community and prevented her from continuing a career in banking. ECF No. 11 at 5; New Compl. ¶ 23.

Defendants argue that there was no publication because Campbell has not offered facts regarding the co-workers or other members of the public to whom defendants allegedly published defamatory statements, or what context such statements were made. ECF No. 9 at 6–7. They also argue, in the alternative, her defamation claim fails because the alleged defamatory statements are privileged. Id. They contend that "[c]ommunications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business." Id. (citing Murray, 542 S.E.2d at 749). They argue the alleged statements were privileged and, therefore, not defamatory. See Bell v. Evening Post Publ'g Co., 459 S.E. 2d 315, 316-17 (S.C. Ct. App. 1995) (affirming the trial court's ruling that statements made by an employer in the course of an internal sexual harassment investigation were protected by a qualified privilege).

11

Here, the court finds that the alleged defamatory statements are not evidenced to be made in the ordinary course of business or during an internal investigation. Campbell's complaint states the defamatory statements were spoken aloud in the workplace and communicated so broadly they prevented her from getting a job at another branch. See New Compl. ¶ 30; Holtzscheiter, 506 S.E.2d at 513. Taking the statements in her complaint as true, as this court is required to do, she has established at least a "mere possibility" that the statements were published and unprivileged. See Hartley, 187 F.3d at 425. Further, the court must resolve any doubt in favor of retained state court jurisdiction. See Marshall, 6 F.3d at 232.

Thus, resolving all questions of fact and law in Campbell's favor, the court finds that Goodwin and Batson were not fraudulently joined (if joined at all) and remands the matter to the Charleston County Court of Common Pleas. See id. Because the court is without subject matter jurisdiction over this dispute, the court cannot reach defendants' motion to dismiss and, therefore, denies that motion as moot.

### C. Attorney's Fees

Campbell requests that the court award counsel her attorney's fees associated with defendants' removal of this case. ECF No. 4-1 at 6. She argues that defendants knew or should have known that their removal was baseless and as such should have never filed a notice of removal, and 28 U.S.C. §1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." Id. The United States Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking

removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  The court will determine if this is a circumstance where fees should be awarded.  See ITT Indus. Credit Co. v. Durango Crushers, Inc., 832 F.2d 307, 308 (4th Cir. 1987) (finding the limited authority of the district courts to award fees as a sanction for a removal taken in bad faith is widely recognized.)  Here, it does not appear to the court that defendants acted in bad faith.  They put forth a fraudulent joinder argument that had some merit, as it is not clear that Campbell's defamation claim will succeed against the non-diverse defendants.  Although it is clear there is diversity between the parties, and the court finds a fraudulent joinder argument is not convincing here, it does not appear that defendants acted in bad faith or without "an objectively reasonable basis for removal" such that an award of fees as a sanction for the removal is warranted.  See Durango, 832 F.2d at 308; Martin 546 U.S. at 136.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to remand and **DENIES AS MOOT** the motion to dismiss.  Accordingly, the court **REMANDS** the matter to the Charleston County Court of Common Pleas.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**August 27, 2025**

**Charleston, South Carolina**